UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ROBERT FLECK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 04-3028 |
| | ) | |
| THE CITY OF SPRINGFIELD, | ) | |
| ILLINOIS, a municipal corporation, | ) | |
| JOHN HARRIS, and DAN HUGHES, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge

The Court now considers Defendants the City of Springfield, John Harris, and Dan Hughes' Renewed Motion for Judgment as a Matter of Law.

### FACTS

Plaintiff Robert Fleck was a patrolman for the City of Springfield's Police Department. Fleck was at a bar for a birthday celebration when fellow officer Dan Patterson engaged in a physical altercation with a patron. During the row, the patron was prostrate on the floor as

Patterson kicked him in the head.  Patterson was fired for this conduct. At an ensuing criminal trial and reinstatement hearing, Fleck testified favorably for Patterson.  Patterson was acquitted and reinstated.

Subsequently, Fleck and his partner, Officer Mark Terlecki, were on duty when they arrested two individuals for possessing cocaine.  After a field test showed the substance was not cocaine, the officers released the individuals and disposed of the test kit.  The officers did not file a written report in connection to the arrest.  On another occasion, during the time of the Illinois State Fair, Fleck called in sick instead of reporting to duty.

Following the test kit incident and the matter of calling in sick, Defendant Dan Hughes, who was then the City's Deputy Chief of Police, recommended that Fleck be terminated as a result of his involvement in the drug arrest and failure to report to duty.  Defendant John Harris, the City's then Chief of Police, met with Fleck's father —a former policeman who served with Harris.  Harris told him that Fleck was going to be fired. Harris held a pre-termination hearing on January 29, 2002, but he did not ask Fleck any questions.  Fleck was fired in January 2002.  He was

reinstated, but it took over a year for that to happen.

Fleck sued the City, Harris, and Hughes under 42 U.S.C. § 1983 for violating his right to free speech and denying him due process. Fleck argued that his termination was motivated by the testimony he gave at Patterson's criminal trial. He also asserted that the pre-deprivation hearing was a sham because the Defendants had already decided to fire him.

A jury heard the case beginning on January 23, 2006. Fleck presented evidence which showed that he was terminated after favorably testifying for Patterson. The evidence also established that officers who committed various types of misconduct were not disciplined by the Defendants or, at the very least, were subjected to less severe punishment than termination. On January 26, the Defendants moved the Court for a directed verdict after Fleck finished presenting the liability phase of his case. The Court denied their motion. The Defendants did not renew their motion after presenting their own evidence.

The jury returned its verdict on January 26. It found the

Defendants liable for violating Fleck's right to free speech and due process. The trial concluded on January 27, 2006, after the jury found the Defendants jointly and severally liable for damages.

On February 10, 2006, the Defendants moved the Court to enter judgment in their favor pursuant to Federal Rule of Civil Procedure 50(b). The motion contends that the evidence at trial was not adequate to support a jury verdict.

## ANALYSIS

A court will reverse a jury's verdict and allow a Rule 50 motion only if "no rational juror could have found for the prevailing party." Turner v. Miller, 301 F.3d 599, 602 (7th Cir.2002). The Court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party. Tart v. Illinois Power Co., 366 F.3d 461, 472 (7th Cir.2004). The Court may not make credibility determinations or reweigh the evidence. Harvey v. Office of Banks & Real Estate, 377 F.3d 698, 707 (7th Cir.2004). "[The Court's] job at this stage is not to determine whether the jury believed the right people, but only to assure

that it was presented with a legally sufficient basis to support the verdict." Harvey, 377 F.3d at 707.

The initial difficulty with the Defendants' motion lies not in the evidence, but in Rule 50(b) itself.  Rule 50(b) provides that in the event a court does not allow a motion for judgment as a matter of law at the close of all the evidence, the movant may renew its request for judgment as a matter of law by filing an appropriate motion within ten days following the entry of judgment.  The Advisory Committee's notes for Subdivision (b) provide that "[a] motion for judgment notwithstanding the verdict will not lie unless it was preceded by a motion for a directed verdict made at the close of all the evidence."  Id.

The docket entries in this case show that the Defendants orally moved for judgment as a matter of law after Plaintiff completed his liability phase on January 26, 2006.  The Defendants did not move for judgment as a matter of law after presenting their own liability evidence.  The Defendants, therefore, did not move for judgment as a matter of law following the close of all the liability evidence.  Even if the Defendants

could overcome this procedural defect, their Rule 50(b) motion would fail on its merits.

Although Defendant Hughes argues that no reasonable jury could find that he violated Fleck's First Amendment right to free speech, the evidence is to the contrary.  To succeed on his First Amendment claim, Fleck had to establish that Hughes was motivated to fire him because he testified in Patterson's trial.  See Spiegla v. Hull, 371 F.3d 928, 935 (7th Cir. 2004).  Hughes contends that the jury could not reach this conclusion given that he recommended termination only after reviewing investigations about the drug kit, his recommendations were not always followed by Harris, Harris made his decision to fire Fleck independently of Hughes' recommendation, and Fleck was fired after Hughes left Springfield's Police Department.

While Hughes' recitation is accurate, those facts do not mandate a directed verdict.  A jury could entertain the facts and still find that Hughes' recommendation was retaliatory.  This is a reasonable conclusion given that Hughes' recommendation came after Fleck testified in

Patterson's favor. The fact that other officers who committed various infractions or engaged in misconduct were not terminated further bolsters Fleck's claim that Hughes' recommendation was fueled by animus. These are legitimate inferences for a jury to make.

Harris fares no better in his attempt to undo the jury's verdict. Harris limits his Rule 50(b) argument to Fleck's due process claim. To prevail on his due process claim, Fleck had to show by a preponderance of the evidence that: a) he possessed a cognizable property interest in his employment; b) he was deprived of that property interest by the government; and c) the deprivation was accomplished without providing him due process. See <u>Schroeder v. City of Chicago</u>, 927 F.2d 1957, 959 (7th Cir. 1991).

Harris does not contest that Fleck had a cognizable property interest or that he was deprived of that interest when he was fired. Rather, Harris contends that the pre-termination hearing Fleck received is *ipso facto* evidence of due process because Fleck failed to show that the hearing was a sham. Harris is incorrect.

7

The evidence at trial showed that Harris met with Fleck's father ten days before the pre-deprivation hearing and told him that he had decided to terminate Fleck.  Harris did not dispute that testimony.  When the pre-deprivation hearing took place, it appeared that Harris was not interested in hearing from Fleck.  Harris asked no questions, made no eye contact, and took no notes.  Fleck was fired the day after the hearing.  It seemed that the civil service documents effecting Fleck's termination—documents that had to be signed by Harris, a representative from Mayor's Office, and the City's human resource office—were completed post haste.  These factors would allow a reasonable jury to find that the Defendants intended to fire Fleck before they afforded a pre-deprivation hearing.  Thus, the jury could conclude that the hearing was a sham and that the Defendants violated Fleck's right to due process.

Finally, the Defendants argue that the City cannot be held liable if there was insufficient evidence to establish Hughes' and Harris' liability.  This argument fails because there is ample evidence to establish Hughes' and Harris' liability.

Ergo, the Defendants' Renewed Motion for Judgment as a Matter of Law (d/e 59) is DENIED.

This case is CLOSED.

IT IS SO ORDERED.

ENTER:  March 20, 2006

FOR THE COURT:

s/ Richard Mills<br>United States District Judge